ANNIE F. ALDRICH *vs.* FRANK L. BOOTHBAY, et al.

Cumberland. Opinion December 5, 1916.

*Master and Servant. Duty of master to provide safe and suitable machinery for employee, or servant. Contributory negligence on part of servant or employee. Burden of proving that machinery or appliances are defective and dangerous.*

1. To entitle the plaintiff to a verdict it was encumbent upon her to establish by a fair preponderance of the evidence that the machine was defective and out of repair as alleged, or at least that it was defective in some one of the particulars alleged, and that such defective condition was the sole cause of her injury.

2. From a careful examination and consideration of all the evidence in the case the court is of the opinion that there is not sufficient evidence to justify the jury in finding that the machine was defective as alleged in the plaintiff's writ.

3. The court is also of the opinion that the evidence does not affirmatively establish that the plaintiff was in the exercise of reasonable care on her part at the time she was injured.

Action on the case to recover damages for injuries sustained by the plaintiff through the alleged negligence of defendant. The negligence complained of and relied upon was an alleged defective condition in the machine at or by which plaintiff was injured. Defendant filed plea of general issue. Verdict for plaintiff in the sum of two thousand dollars. Motion for new trial filed by defendant. Motion sustained. New trial granted.

Case stated in opinion.

*Hinckley & Hinckley,* for plaintiff.

*William Lyons,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

KING, J.   Action of tort to recover damages for personal injuries alleged to have been received by the plaintiff while in the defendants' employ operating a corn cutting machine.   The case is before this court on defendants' motion to set aside the verdict in the plaintiff's favor for $2,000, on the ground that it is contrary to the weight of the evidence and excessive in amount.

The machine which the plaintiff was operating at the time of her injuries was a model M, 1900, Sprague corn cutter.   The work of the machine is the cutting of the kernels of corn from the cob. There is an opening in the center of the head of the machine through which the ears of corn can pass and thence be carried into and through the machine.   Around the opening are the ends of four arms in each of which there is a spur wheel revolving inward. The ears of corn are carried along endwise on an endless chain running in the feed trough until they are caught by the spur wheel and drawn into the machine.   The arms and knives are so attached to the head of the machine with springs or other appliances that the opening is to some extent self adjusting, thereby accommodating itself to the larger and smaller ears.   It is a usual occurrence for the ears to clog in the opening or as they pass into the machine between the knives, and such clogging does not necessarily indicate that the machine is defective or out of repair.   Around the edge of the head of the machine is a circular rod, with an upright handle at its top, and the rod is so connected to the head of the machine that the opening through which the ears of corn enter and pass through the machine can be considerably enlarged by using some force on the handle, thereby moving the circular rod a little one way or the other.   And the purpose of the rod with the handle thereon is to enable the operator to enlarge the opening so that the clogging ears may clear themselves, as they often do.   If they do not clear themselves by the moving of the rod, then the operator stops the machine by pushing back a lever, within easy reach, which moves the belt shipper by which the belt is slipped from the fixed to the loose pulley and the machine stops.   Then the clogged ears are cleared with a stick or piece of iron, and the machine is again started by pulling the lever forward thereby shifting the belt onto the fixed pulley.   There is a removable hood on the front of the

head above the opening, but not extending down over it. By removing that hood the opening between the spur wheels and between the knives just back of the spur wheels is more easily reached.

The plaintiff was injured by getting her right hand into the opening and in contact with the knives whereby the back of her hand was cut. Her contention is, that, the ears of corn having clogged, she stopped the machine, removed the hood, and while digging out the clogged ears with a stick the machine "started of its own free accord" and the stick and her hand were drawn into the machine.

The plaintiff alleges in her declaration that the defendants had suffered the machine on which she was working to become defective and out of repair in several specified particulars, of all of which they had knowledge, and that such defective condition of the machine was the sole cause of her injuries. The declaration is unprecedently voluminous, covering 25 closely printed pages of the record. It alleges at least five separate and distinct defects in the machine, in as many counts, and then, in as many more counts, sets out the same defects, alleging that the plaintiff, prior to her injuries, had complained to the defendants in respect to each of said defects and that they had assured her that if she would continue to operate the machine the defects would be remedied at once. We shall not attempt here to state in any detail the allegations in the writ in reference to those alleged defects. In a word they are, that the lever used in stopping and starting the machine had become worn to such an extent that it was loose and unstable, and when it was pushed down, thereby stopping the machine, it would not remain so but would work back allowing the belt to slip onto the fixed pulley and start the machine; that the "fork" which forms a part of the belt shipper and guides the belt had become so worn that it allowed the belt a greater play than was proper and permitted the belt to work over from the loose to the fixed pulley thereby starting the machine; that the belt itself was improperly adjusted in that it was looser than was necessary, which excess looseness caused it to strike against the fork thereby moving it and its attachments so that the belt worked from the loose pulley onto the

fixed pulley thereby starting the machine; that the belt was old and cut and fastened together in an uneven and irregular manner which caused it to strike the fork and thereby it was moved over so that the belt came onto the fixed pulley and started the machine; that the pulley on the overhead shafting was not properly adjusted with the pulleys on the machine, and that such want of adjustment caused the belt to work from the loose to the fixed pulley whereby the machine was started.

To entitle the plaintiff to a verdict it was incumbent upon her to establish by a fair preponderance of the evidence that the machine was defective and out of repair as alleged, or at least that it was defective in some one of those particulars, and that such defective condition was the sole cause of her injury.

We have examined the evidence with painstaking care and we are clearly of the opinion that there is not sufficient evidence in the case to justify the jury in finding that the machine was defective in any of its parts as alleged in the plaintiff's writ. The witnesses in behalf of the plaintiff were her husband, herself, Dr. Knight, and Harry P. Boyle. The last two gave no testimony of their own knowledge concerning the condition of the machine. And a careful examination of the testimony of both the plaintiff and her husband does not show that either of them gave any substantial testimony tending to show that the machine was defective in any of the particulars as alleged. Mr. Aldrich began work for the defendants on Monday, and his wife, the plaintiff, began to work for them on the following day, Tuesday, and on the machine in question. She was injured on Saturday of the same week. His work was on the retort or cooker, at the boiler room, some distance from the machine on which the plaintiff was working. Both testified that the machine clogged frequently; but, as above stated, that is not unusual, and not sufficient evidence we think of a defective condition of the machine. Neither the plaintiff nor her husband testified to any personal knowledge of the particular defective conditions alleged. It is true that they both testified that the belt came off frequently and that the foreman, Mr. Swett spent a long time on Thursday fixing the machine, and the belt so it would stay on; and they both testified that on Friday, Mrs. Aldrich

told her husband that the machine had started while she was clean-
ing it, and that he then so informed the foreman, who said if she
would put the lever back and be careful he thought she could run
the machine until he had time to look it over. ·

On the other hand, Mr. Swett, in answer to the question whether
the plaintiff or her husband ever made any complaint to him about
the machine before she got hurt, answered, "not one thing;" and
he further testified, that they never had any trouble with the
machine either before or after the plaintiff was hurt. Mrs. Lydia
M. Hoyt, called by the defense, who operated another corn cutter,
during all the same time that the plaintiff was operating the machine
in question, both machines being belted to the same shaft, and about
10 feet apart, testified: "Q. During the time that Mrs. Aldrich
was there, did you ever see the belt of her machine come off? A.
Never. Q. Did you see anybody repairing the machine she was
on? A. No, only to sharpen the knives and replace them." The
man who tended the machine on which the plaintiff worked, who
put the corn in the hopper, also testified that while she was oper-
ating the machine he never saw anyone making repairs on the
machine, and did not see the belt come off. The machinist, who
overhauled and started up the corn cutters in the defendants' fac-
tory at the beginning of the packing season of 1913, only a short
time before the accident, was called to examine the machine imme-
diately after the plaintiff was hurt, and he found it in proper
condition and not defective as alleged.

We are therefore constrained to the conclusion that the machine
was not defective as alleged, and that no negligence on the part of
the defendants was proved.

The court is also of the opinion that the evidence does not
affirmatively establish that the plaintiff was in the exercise of rea-
sonable care. She was familiar with the machine, having operated
a similar one before. She understood the danger of getting her
hand in contact with the spur wheels. She was told both by her
husband and by the foreman to keep her hands away from the
opening of the machine, if not she would get hurt. We think it is
quite incredible that the machine, if stopped, started of its own
accord. And the man who was tending the machine and who stood

facing the plaintiff testified that she did not stop the machine, but undertook to clear it while it was going. The evidence and all the circumstances support we think no other reasonable conclusion than that the plaintiff undertook to clear the machine with the stick without stopping it, and in doing so got her hand in contact with the spur wheels which drew it into the machine. For that unfortunate accident the defendants should not be held liable. It was not the result of any negligence on their part, but was due, we think, to a want of reasonable care on the plaintiff's part.

*Motion sustained.*
*New trial granted.*